IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2015 OCT 29 PM 3:37

DON POWERS and KARON WERNLI,
          Plaintiffs,

-vs-                                                Case No. A-14-CA-1004-SS

NORTHSIDE INDEPENDENT SCHOOL
DISTRICT and BRIAN T. WOODS,
          Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Northside Independent School District and Brian T. Woods's 12(b)(6) Motion to Dismiss in Part for Failure to State a Claim Upon Which Relief Can Be Granted, or in the Alternative, 12(c) Motion for Judgment in Part on the Pleadings [#23], Plaintiffs Don Powers and Karon Wernli's Response [#26] thereto, Defendants' Reply [#28-1] thereto, and Defendants' Corrected Opposed Motion for Leave to Allow Defendants' Reply to Plaintiffs' Response to Defendants' Second Motion to Dismiss to Exceed Page Limits [#28].[1]  Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This case arises from the termination of Plaintiffs Don Powers and Karon Wernli, formerly the principal and assistant principal of Adams Hill Elementary School in San Antonio, Texas, by

---

[1] Defendants' Corrected Opposed Motion for Leave to Allow Defendants' Reply to Plaintiffs' Response to Defendants' Second Motion to Dismiss to Exceed Page Limits [#28] is GRANTED.

their former employer, Defendant Northside Independent School District (NISD). Plaintiffs claim they were fired in retaliation for reporting the administration's failure to reasonably accommodate a disabled student, and allege Defendant Brian T. Woods, NISD superintendent, "us[ed] his influence as superintendent" to effect their terminations. While Plaintiffs bring claims against NISD for violation of the Texas Whistleblower Act and Plaintiffs' free speech rights under the federal and Texas constitutions, the presently pending motion to dismiss[2] concerns only Plaintiffs' 42 U.S.C. § 1983 claim against Woods, in his individual capacity, for alleged violation of Plaintiffs' First Amendment rights to free speech.

The following facts are drawn from Plaintiffs' complaint. During the 2012–13 school year, Plaintiffs and three other Adams Hill educators served on a "504 committee" tasked with conducting an evaluation of J.B., a student whose ability to read is impaired.[3] The 504 committee was convened pursuant to the implementing regulations of Section 504 of the Rehabilitation Act of 1973, which require federally-funded school districts to "conduct an evaluation . . . of any [student] who, because of handicap, needs or is believed to need special education or related services[.]" 34 C.F.R. § 104.35; *see also* 29 U.S.C. § 794(a). Plaintiffs and the other members of the 504 committee determined J.B. had a reading disability and was therefore entitled to an accommodation concerning the upcoming 2013 STAAR test, a Texas standardized test used to measure students' academic performance. Specifically, the committee found J.B. was entitled to an oral administration of the

---

[2] Defendants' motion for summary judgment is presently pending on the docket. *See* Mot. Summ. J. [#30]. The motion for summary judgment will be dealt with in a separate opinion.

[3] The pleadings do not reveal the nature of J.B.'s reading impairment.

test, meaning the test questions would be read aloud to J.B. by a test proctor rather than given to J.B. on paper.

On June 21, 2013, NISD's Section 504 coordinator, Anna Draker, "decided that J.B. was not disabled" and "directed the school to not give J.B. an oral administration of the test." First Am. Compl. [#22] ¶ 7(b)(2). Plaintiffs felt Draker's unilateral action was a violation of the Rehabilitation Act, as "only the committee is authorized to determine a student's § 504 eligibility and any accommodations to which the student is entitled." *Id.* ¶ 7(c). As such, on July 22, 2013, Plaintiffs reported NISD and Draker's allegedly unlawful conduct concerning J.B. to the Texas Education Agency.

On July 24 and July 30, 2013, respectively, NISD suspended Powers and Wernli. *Id.* ¶¶ 7(e)(2), (5). While it is not entirely clear from their complaint, it appears Plaintiffs were told they were being suspended because NISD suspected them of misconduct related to administration of the STAAR test. *See id.* ¶ 7(e)(3) (suggesting NISD accused both Powers and Wernli of "cheat[ing] on the STAAR test"). On September 4 and September 5, 2013, Plaintiffs filed grievances contesting their suspensions and claiming NISD was retaliating against them for reporting the J.B. incident to the Texas Education Agency.

On September 5, 2013, the day after Wernli filed her grievance, she received a phone call "demanding that she meet with" Defendant Woods. *Id.* ¶ 17(e)(9). Woods, Wernli, and an unnamed person "whom Ms. Wernli had accused of violating the law in her grievance" met on September 6, 2013. *Id.* ¶ 17(e)(10). During the meeting, Wernli alleges the unnamed person "interrogate[d] her about the testing issue," *id.*, and on September 9, 2013, Wernli filed an amended grievance asserting claims regarding Woods's conduct during the meeting. *Id.* ¶ 17(e)(11).

On November 20, 2013, Plaintiffs contacted the Texas Education Agency once again to discuss their previous report of unlawful conduct concerning J.B. *Id.* ¶ 17(e)(16). One month later, on December 10, 2013, Woods recommended to NISD's board of trustees that Plaintiffs' employment be terminated. *Id.* ¶ 17(e)(17). Finally, on April 22, 2014, the board of trustees terminated Plaintiffs "pursuant to Defendant Woods' behest." *Id.* ¶ 17(e)(18).

Plaintiffs initiated this action on May 22, 2014, by filing suit against NISD in the 216th Judicial District Court of Gillespie County, Texas, alleging NISD terminated their employment in violation of the Texas Whistleblower Act. Notice Removal [#1] at 1; *id.* [#1-2] at 3–10 (Orig. Pet.) ¶ 26. On October 13, 2014, Plaintiffs amended their state court petition to add Woods as a defendant and to raise additional causes of action under the Texas and United States Constitutions, § 1983, the Rehabilitation Act, and the Americans with Disabilities Act. *Id.* at 28–35 (First Am. Pet.) ¶¶ 33–37.

Defendants removed the suit to this Court on November 6, 2014, invoking the Court's federal question jurisdiction. *See* Notice Removal [#1] at 2. Following initial motions practice, a motion to continue, and a hearing, the Court ordered Plaintiffs to file an amended complaint clearly setting forth their individual causes of action. *See* July 21, 2015 Order [#21]. Plaintiffs filed their "First Amended Complaint" on August 4, 2015. *See* First Am. Compl. [#22]. The instant motion to dismiss followed.

## Analysis

### I.     Legal Standard

#### A.     Motion to Dismiss

A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding

a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss, courts may consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.      Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Motions for judgment on the pleadings are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the

pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks omitted). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

## II. Application

Defendants argue Plaintiffs' § 1983 claims against Woods, which Plaintiffs bring against Woods in his individual capacity,[4] must be dismissed because Woods is entitled to qualified immunity. Specifically, Defendants argue (1) Plaintiffs have failed to plead any specific facts with respect to Woods that, if proven, would constitute a deprivation of Plaintiffs' constitutionally protected rights, and (2) even if Plaintiffs have alleged a deprivation, Plaintiffs have failed to establish that Woods's conduct was objectively unreasonable in light of clearly established law. As set forth below, the Court finds that while Plaintiffs have adequately stated a claim for relief against Woods, he is entitled to qualified immunity. Accordingly, Plaintiffs' § 1983 claim against Woods is subject to dismissal.

### A. Plaintiffs Have Adequately Stated a Claim Against Woods

In their First Amended Complaint, Plaintiffs allege Woods "used his authority . . . as superintendent to create a bogus case for termination against Plaintiffs and, in conjunction with his influence over the Board of Trustees, effected the termination of Plaintiffs' employment by Board action." First Am. Compl. [#22] ¶ 15. According to Plaintiffs, Woods's "conduct in causing the termination of Plaintiffs' employment . . . was in retaliation for their exercising their right to freedom of speech under the First Amendment," rendering Woods liable under § 1983. *Id.* ¶ 16.

---

[4] *See* Resp. [#26] at 2 ("Plaintiffs have clearly sued Dr. Woods in his individual capacity.").

Defendants challenge the sufficiency of these allegations, contending neither "creat[ing] a bogus case for termination" nor recommending to the Board that Plaintiffs be terminated are actionable adverse employment actions[5] under § 1983. Additionally, Defendants argue that because only the Board of Trustees had the authority to terminate Plaintiffs' employment contracts under Texas law, Woods cannot be held liable for effecting or influencing Plaintiffs' terminations, because "he did not cause the adverse employment action." Mot. Dismiss [#23] at 9.

Both of Defendants' arguments have at their core the same objection: that Plaintiffs have failed to allege Woods caused their termination. In support of the proposition that "if Dr. Woods did not cause the adverse employment action, he cannot be liable under § 1983," *id.*, Defendants cite *Beattie v. Madison County School District*, 254 F.3d 595 (5th Cir. 2001) (en banc). In *Beattie*, the Fifth Circuit considered the individual liability of Acton, a school principal, and Jones, a school superintendent, who allegedly retaliated against Beattie for exercising her right to free speech by recommending her termination to the school board. 254 F.3d at 604–05. In its discussion affirming summary judgment in favor of Acton and Jones, the *Beattie* court stated Acton and Jones "did not fire Beattie directly, but merely recommended her termination to the board, which made the final decision. If Acton and Jones did not cause the adverse employment action, they cannot be liable under § 1983, no matter how unconstitutional their motives." *Id.* at 605. Here, because only the Board of Trustees had the power to terminate Plaintiffs under Texas law, Defendants claim *Beattie* controls, and therefore that Plaintiffs have failed to state a § 1983 claim against Woods. *See* Mot.

---

[5] To state a claim for First Amendment retaliation against a public employee, Plaintiffs must allege (1) they suffered an adverse employment decision; (2) the plaintiff's speech involved a matter of public concern; (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct. *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015) (quoting *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc)).

Dismiss [#23] at 10.

The Fifth Circuit, however, recently cast doubt upon Defendants' interpretation of *Beattie* in *Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015). In *Culbertson*, two contractors whose company provided breath-alcohol testing services for Harris County brought a § 1983 claim against the Harris County assistant district attorney (ADA) in her individual capacity, alleging First Amendment retaliatory termination. *Id.* at 614, 625. The contractors alleged after they spoke out regarding the unreliability of certain breath-alcohol testing equipment, the ADA pressured the Harris County Commissioners Court, the relevant decision-making body, to terminate their contract with Harris County. *See id.* at 621. Considering whether the contractors stated a claim against the ADA in her individual capacity, the *Culbertson* court discussed *Beattie* in detail, noting that "some later decisions . . . have interpreted *Beattie* to hold that only final decision-makers may be held liable for First Amendment retaliation under § 1983." *Id.* at 626 (internal quotation omitted).

The *Culbertson* court reviewed the facts of *Beattie*, noting in particular that the board "fired Beattie for permissible, constitutional motives independently of Acton's and Jones's recommendation" and that those permissible motives were a "superseding cause" which "shield[ed] [Acton and Jones] from liability." *Id.* at 625 (quoting *Beattie*). In short, Acton and Jones's unproven retaliatory motives were "displaced by other motives." *Id.* As the court explained:

> Our conclusion as to the individual liability of [Acton and Jones] was that because the ultimate decision was made by the board *independently of these unproven unconstitutional aims*, summary judgment was proper. We did not necessarily hold that there was no individual liability simply because the board made the decision.

*Id.* at 626 (internal quotes and citations omitted) (emphasis added).

The *Culbertson* court then pointed to *Jett v. Dallas Independent School District*, 798 F.2d

748, 758 (5th Cir. 1986), a pre-*Beattie* decision which required only that a plaintiff show "an affirmative causal link" between the individual actor's conduct and the adverse employment action taken by the decision maker for individual liability to attach. *Culbertson*, 790 F.3d at 626 (quoting *Jett*, 798 F.2d at 758). The *Jett* court explicitly rejected the individual defendant's "contention that the judgment as to him must be reversed because . . . he had only recommending authority." *Jett*, 798 F.2d at 758. Acknowledging the "tension" between *Jett* and the later decisions interpreting *Beattie* to hold that only final decision makers may be held liable for First Amendment retaliation under § 1983, the *Culbertson* court concluded:

> It can at least be said that before [the ADA] could be individually liable despite not being the final decision-maker, it must be shown that her recommendation was made in retaliation for constitutionally protected speech and was the reason the adverse employment decision was made by the final decision-maker. A "superseding cause" would shield [the ADA] from liability.

*Culbertson*, 790 F.3d at 626.

Following *Culbertson*, the Court finds as Plaintiffs have alleged Woods "effected the termination of [their] employment by Board action," they have adequately stated a § 1983 claim for First Amendment retaliation against Woods. The Court notes, however, that under *Culbertson*, Plaintiffs must ultimately show Woods's recommendation to the Board that Plaintiffs be terminated (1) was made in retaliation for their reporting of the J.B. incident to the Texas Education Agency, *and* (2) was the reason the Board ultimately terminated Plaintiffs. If the evidence shows otherwise, individual liability cannot attach.

### B.     Qualified Immunity

Defendants argue Plaintiffs' § 1983 claim against Woods must nevertheless be dismissed because Woods is entitled to qualified immunity for his conduct. The Court agrees. Qualified

immunity requires a court to "determine whether the plaintiff has suffered a violation of his constitutional rights and, if so, whether a reasonable official should have known that he was violating the plaintiff's constitutional rights." *Culbertson*, 790 F.3d at 627 (quoting *Murray v. Earle*, 405 F.3d 278, 285 (5th Cir. 2005)). Confronted with the question whether the ADA was entitled to qualified immunity despite its holding the plaintiffs stated a claim against her, the *Culbertson* court found as follows:

> We have already noted ambiguity as to the liability of a person for recommending an adverse employment decision. . . . It was unsettled at the time of [the ADA's] actions, and remains so now, whether someone who is not a final decision-maker and makes a recommendation that leads to the plaintiff being harmed can be liable for retaliation under Section 1983. *Cf. Beattie*, 254 F.3d at 595, 604–05; *Jett*, 798 F.2d at 758 . . . . In fact, some clear statements in the caselaw have held there can be no liability.
>
> We conclude the claims against [the ADA] should be dismissed based on qualified immunity.

*Id.* (additional citations omitted). In light of the foregoing analysis and the *Culbertson* court's statement the law in this area remains unsettled, the Court finds Plaintiffs' claims against Woods should be dismissed based on qualified immunity.

### Conclusion

Accordingly:

    IT IS ORDERED that Defendants Northside Independent School District and Brian T. Woods's 12(b)(6) Motion to Dismiss in Part for Failure to State a Claim Upon Which Relief Can be Granted, or in the Alternative, 12(c) Motion for Judgment on the Pleadings [#23] is GRANTED; and

    IT IS FINALLY ORDERED that Defendants' Corrected Opposed Motion for Leave

to Allow Defendants' Reply to Plaintiffs' Response to Defendants' Second Motion to Dismiss to Exceed Page Limits [#28] is GRANTED.

SIGNED this the 29th day of October 2015.

SAM SPARKS
UNITED STATES DISTRICT JUDGE